UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS CENTRAL RAILROAD COMPANY, an Illinois Corporation, d/b/a CN,<br><br>      Plaintiff,<br><br>      v.<br><br>KINDER MORGAN LIQUIDS TERMINALS, a Delaware LLC,<br><br>      Defendant. | 16 C 8044 |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Kinder Morgan Liquids Terminals' ("Kinder Morgan") motion to dismiss Plaintiff Illinois Central Railroad's ("CN") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part Kinder Morgan's motion.

## BACKGROUND

The following facts are taken from CN's Amended Complaint and are assumed to be true for purposes of this motion. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The Court draws all reasonable inferences in favor of CN. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

This lawsuit stems from alleged charges assessed by CN for demurrage[1] and intraplant switching[2] fees. According to CN's Amended Complaint, between August 2015 and October

---

[1] Demurrage is a "late charge" paid when an entity fails to load or unload cargo within a

2016, CN transported freight rail cars to Kinder Morgan's Argo Facility. The Argo Terminal acts as a rail transportation intermediary that will transload shipped materials by moving them from the railroad to another form of transportation, such as pipeline or truck, or will temporarily store shipped materials for the owner. CN alleges that Kinder Morgan is responsible for $1,841,045 in demurrage fees assessed in 95 invoices from August 2015 to October 2016. These invoices relate to rail cars allegedly delayed at the Argo Terminal. CN seeks to recover the balance of its invoices pursuant to the demurrage regulations and its demurrage tariff. Additionally, CN claims Kinder Morgan is liable for $28,577.00 in intraplant switching charges between August 2015 and October 2016. According to CN, Kinder Morgan requested intraplant switching services which CN performed. Furthermore, CN asserts they have not received payment for services rendered.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but must provide enough factual support to raise his right to relief above a speculative level. *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable

---

specified time. *See, e.g.*, Demurrage, Black's Law Dictionary (10th ed. 2014).

[2] Intraplant switching involves the movement of rail cars from one location inside the Argo Facility to another location within the Argo Facility.

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I. Count I—Demurrage Charges

Kinder Morgan argues that Count I of CN's Amended Complaint should be dismissed because: (i) demurrage regulations do not apply to this dispute; (ii) CN fails to allege that Kinder Morgan unduly caused the rail car delays; and (iii) CN fails to allege that it provided Kinder Morgan with proper notice of the material changes to its tariff.

#### A. Demurrage Regulations

Under the guidelines promulgated by the Surface Transportation Board (the "STB"),

> Demurrage shall be assessed by the serving rail carrier, i.e., the rail carrier providing rail cars to a shipper at an origin point or delivering them to a receiver at an end-point or intermediate destination. A serving carrier and its customers (including those to which it delivers rail cars at origin or destination) may enter into contracts pertaining to demurrage, but in the absence of such contracts, demurrage will be governed by the demurrage tariff of the serving carrier.

49 CFR § 1333.2

According to Kinder Morgan, demurrage regulations and a carrier's tariff do not apply when the relevant parties in a demurrage dispute—the carrier and its customers or shippers—entered into contracts pertaining to demurrage. In the instant matter, Kinder Morgan contends that CN's customers entered into private contracts with it pertaining to the demurrage charges sought by

3

CN. Therefore, Kinder Morgan maintains that these contracts supersede the STB's regulations and CN's tariff.

CN counters that Kinder Morgan's "assertion . . . that CN's customers . . . have contracts with [Kinder Morgan] under which they agree to pay demurrage is false, irrelevant and provides no basis for the dismissal of the Amended Complaint." Furthermore, CN contends "in the absence of any allegations in the Amended Complaint that CN entered into contracts assigning demurrage responsibility to another party, the agreements referenced by [Kinder Morgan] have no bearing in the context of a motion to dismiss." We agree.

The demurrage regulations specifically provide: "*A serving carrier and its customers* (including those to which it delivers rail cars at origin or destination) may enter into contracts pertaining to demurrage, but in the absence of such contracts, demurrage will be governed by the demurrage tariff." (Emphasis added). Kinder Morgan attempts to expand the scope of the exclusion under 49 CFR § 1333.2 to include private contracts between a terminal and its customers (shippers). This argument is misplaced. A plain reading of the demurrage regulations clearly provides in the absence of a private contract between *a common carrier and its customers* that the demurrage regulations will apply. Therefore, Kinder Morgan is excused from demurrage liability only if CN is a party to the agreements. Here, CN's Amended Complaint does not include any allegations that CN and its customers entered into any private contracts pertaining to liability for demurrage. Furthermore, CN explicitly maintains that they "have not entered into any private contracts [with its customers] related to the payment of demurrage charges for shipments made to [Kinder Morgan's] storage facility." For that reason, Kinder Morgan's motion to dismiss this claim is denied.

**B.     Undue Delay**

Kinder Morgan further contends that Count I of CN's Amended Complaint should be dismissed because CN failed to allege that Kinder Morgan unduly caused delays of the rail cars.

Any person receiving rail cars from a rail carrier for loading or unloading who detains the cars beyond the period of free time set forth in the governing demurrage tariff may be held liable for demurrage if the carrier has provided that person with actual notice of the demurrage tariff providing for such liability prior to the placement of the rail cars. The notice required by this section shall be in written or electronic form.

49 CFR § 1333.3

Kinder Morgan asserts that, "rather than placing liability directly on the party receiving the rail cars, the demurrage regulations only allow for the *possibility* that a receiver may be liable." Furthermore, Kinder Morgan claims that CN must "allege facts showing Kinder Morgan actually caused the delays resulting in CN's demurrage claim or that Kinder Morgan unduly detained the rail cars." CN counters that, under 49 CFR § 1333.3, they are not required to show that Kinder Morgan actually caused the delays or unduly detained the rail cars.

In interpreting a statute or a regulation, a court should not "read absent word[s]" into the enactment to explain its meaning. *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004). This is particularly true where a party asks the Court to read a limitation into a statute or a regulation. *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997) ("[W]e are prohibited from reading into clear statutory language a restriction that Congress itself did not include."). Under 49 CFR § 1333.3, there is no requirement that a party must prove that the person receiving the rail cars caused the delays or unduly detained the rail cars. To establish potential liability under § 1333.3, all that is required is for a party to "detain [ ] the cars beyond the period of time set forth in the governing demurrage tariff." Here, CN has alleged that Kinder

5

Morgan detained the cars beyond the period of time they were allotted. Additionally, Fed. R. Civ. P. 8(a)(2) only requires the allegations in a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." CN has set forth a succinct claim for relief that meets the plain face reading of 49 CFR § 1333.3. Therefore, we deny Kinder Morgan's motion to dismiss this claim.

    C.    **Notice**

Kinder Morgan contends that CN's complaint should be dismissed because "under the demurrage regulations, a rail carrier is required to provide actual notice of its demurrage tariff to a party before the rail carrier seeks to recover demurrage charges from the party." Furthermore, Kinder Morgan alleges that CN failed to notify Kinder Morgan when it increased its demurrage tariff in violation of 49 CFR § 1333.3. In response, CN asserts that Kinder Morgan was served with "notice of the applicable tariff in compliance with 49 CFR §1333.3." Moreover, CN claims that "whether [they] updated [its] demurrage tariff subsequent to delivering a blanket notice to [Kinder Morgan] and whether such changes to the CN tariff constitutes a 'material change'" requiring further notice is a fact question.

Under 49 CFR § 1333.3, a party is required to provide "actual notice of the demurrage tariff . . . prior to the placement of the rail cars." In its Amended Complaint, CN alleges that "all customers, including Kinder Morgan," were notified in compliance with 49 CFR § 1333. In support of its claim, CN attached a letter to its Amended Complaint showing that Kinder Morgan was notified in June 2014 about CN's tariff. However, Kinder Morgan argues that CN adjusted its demurrage rates a few months later and failed to notify CN as mandated by 49 CFR § 1333.3.

The purpose of a complaint is to give the opposing party "fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C.*, 496 F.3d at 776 (quoting *Twombly*,

550 U.S. at 555). Here, CN has put Kinder Morgan on notice that it is seeking demurrage charges for the period between August 2015 and October 2016. CN has also pled that it provided Kinder Morgan with notice of its tariff. Whether CN updated its tariff, as Exhibit H seems to suggest, and gave proper notice of the update to Kinder Morgan is a matter that can be easily ascertained with limited fact discovery. Thus, Kinder Morgan's motion to dismiss Count I is denied.

## II.    Count II—Switching Fees

CN claims that under the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C.S. § 10101 "a rail carrier is required to provide transportation or services on a reasonable request." 49 U.S.C.S. § 10101. Furthermore, under 49 U.S.C. § 10702, "a rail carrier providing transportation or services subject to the jurisdiction of the STB shall establish reasonable rates for such services, and rules and practice for such services." In accordance with 49 U.S.C. § 10702, CN created tariff Item 13000. Specifically, "Item 13000 of the CN tariff describes switching services, including certain 'optional switching services.'" Item 13000 states that while companies have the "option of hiring a third party contractor to perform . . . in-plant switching [, companies can also] take advantage of CN's optional services and have [its] crew and local locomotives perform the work." CN maintains that Kinder Morgan made requests for the optional intraplant switching services, which CN performed. Therefore, CN argues Kinder Morgan "is liable for such switching services as described under Item 13000 of the CN tariff and pursuant to 49 U.S.C. § 11101 and 49 U.S.C. § 10702.

Kinder Morgan maintains that it is not responsible for the switching fees since it was not a consignee, consignor, or owner of the goods being shipped. *Illinois Central Railroad Company v. South-Tec Development Warehouse*, 337 F.3d 813, 820 (7th Cir. 2003). However,

Kinder Morgan's reliance on *Illinois Central Railroad* is misplaced. In *Illinois Central Railroad*, the Seventh Circuit held that liability for freight charges may be imposed under six circumstances: "against a consignor, consignee, owner of the property, or others by statute, contract, or prevailing custom." *Id.* (quoting *Evans Prods. Co. v. I.C.C.*, 729 F.2d 1107, 1113 (7th Cir. 1984)). While Kinder Morgan correctly asserts it has no liability under the first three circumstances, it fails to acknowledge its potential liability under the last three circumstances.

Here, CN argues that 49 U.S.C.S. § 10101 requires them to provide "transportation or services on a reasonable request." To comply with 49 U.S.C. § 10702, CN created Item 13000 of the CN tariff setting its rates and rules for such services. CN maintains that it provided Kinder Morgan with Item 13000. According to CN, Kinder Morgan made a reasonable request for optional intraplant switching services, which CN performed. Thus, CN claims, "[u]nder these circumstances, [Kinder Morgan] as the party requesting the intraplant switching services, is liable for switching fees, regardless of whether [Kinder Morgan] is a cosignee, consignor or owner of the goods." For these reasons, Kinder Morgan's motion to dismiss Count II is denied.

## III.  Count III—Declaratory Judgment

The Declaratory Judgment Act "allows federal courts, in their discretion, to render declaratory judgments only where there exists an 'actual controversy.'" 28 U.S.C. § 2201; *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir.1995) (citations omitted). An actual controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* Here, CN seeks a declaratory judgment "confirming (when there is no contractual agreement to pay demurrage) that the entity receiving rail cars . . . is liable for the payment of demurrage under . . .

8

49 CFR §1333."  Kinder Morgan asserts that CN's declaratory judgment action is "duplicative and unnecessary."  We agree.

In *Tempco Electric Heater Corporation v. Omega Engineering, Inc.*, the Seventh Circuit held that "[i]t is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction."  819 F.2d 746, 747 (7th Cir. 1987).  Furthermore, this Court noted that in "this district, courts commonly exercise that discretion where the claim for declaratory judgment substantially overlaps with Plaintiff's substantive claims."  *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1205 (N.D. Ill. 2015); *see Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) (Where the "substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action 'serve[s] no useful purpose.'").

Here, CN's claim for declaratory judgment is duplicative of its demurrage claim in Count I.  Specifically, CN alleges that it is "entitled to declaratory relief finding that [Kinder Morgan] was the party receiving railcars for loading and unloading" and that CN "followed the regulations found at 49 CFR § 1333 *et seq.*, including giving [Kinder Morgan] full notice of its tariff and of the application of the new regulations," that "no subsequent notice was required," and that "no material changes to the tariff related to demurrage charges . . . applied to the [Kinder Morgan] liquid storage facility at Argo, Illinois."  Thus, the substantive legal issue, whether Kinder Morgan is liable for demurrage fees under 49 CFR § 1333, is the same in both Count I and in Count III.  Therefore, this Court declines to exercise its discretion to hear the declaratory judgment claim, and dismisses this Count.

## CONCLUSION

For the aforementioned reasons, the Court grants Kinder Morgan's motion to dismiss Count III of CN's Amended Complaint. Kinder Morgan's motion to dismiss Counts I and II is denied. It is so ordered.

ENTER:

*/s/ Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

DATE: May 9, 2017